UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION  AT LEXINGTON

| | | |
|---|---|---|
| MARILYN K. BAKER, ) | | |
|     Plaintiff ) | | CIVIL ACTION NO. 5:11-177-KKC |
| ) | | |
| v. ) | | |
| ) | | |
| PATRICK R. DONAHOE, in his official ) | | |
| Capacity as Postmaster General of the ) | | **OPINION AND ORDER** |
| United States, ) | | |
|     Defendant ) | | |

This matter is before the Court on the Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (DE 12) filed by the Defendant, Patrick R. Donahoe, Postmaster General for the United States Postal Service ("USPS").  The Plaintiff, Marilyn K. Baker ("Baker"), an employee of the USPS, filed this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  Baker alleges that during her employment she suffered discrimination based upon her gender, hostile work environment discrimination, and retaliatory discrimination.  USPS argues that Baker withdrew a portion of the harassment claims as part of an administrative settlement agreement and that others must be dismissed for her failure to exhaust administrative remedies.  USPS also contends that the remaining harassment claim fails to constitute hostile work environment as a matter of law.  Finally, USPS argues there is insufficient evidence for the retaliatory discrimination claim.

For the reasons set forth below, the Defendant's motion is GRANTED.

**I.  FACTUAL BACKGROUND**

In her Complaint (DE 1), Baker alleges that she "has been employed for a substantial number of years" as a USPS employee.  (DE 1 at ¶ 13).  She states that by 2009 she was

1

employed as a "Supervisor, Customer Service" at the Bluegrass Station of the Lexington, Kentucky, Post Office. Baker alleges that, in 2009, USPS management "wrongfully attempted to reassign" her from Bluegrass Station to Brentwood Station. The reassignment did not begin until January 4, 2010. Baker asserts that she filed an initial Equal Employment Opportunity ("EEO") complaint on January 19, 2010. In that EEO complaint, Baker claimed that on January 4, 2012, she was "yelled at by her manager, and learned she would be moved to another facility" and that "on January 9, 2010, she became aware that a coworker was going to receive a 90-day training period during his tour and she had not been given the same offer when she worked the same job." (DE 12-3, EEO Case No. 4C-400-0031-10, Informal Complaint). Shortly thereafter, Baker returned to Bluegrass Station. Baker claims she "had to file an EEO complaint to have them return me to Bluegrass Station." (DE 22-1, Baker Declaration ("Baker Decl."), April 2, 2012, at ¶ 8). Following a conference on March 16, 2010, Baker withdrew this complaint and signed a document waiving her claim. (DE 12-4, EEO Case No. 4C-400-0031-10, Withdrawal of Complaint of Discrimination). As part of this settlement, Ken Kendrick ("Kendrick"), the manager at Bluegrass Station at the time, signed a document agreeing to maintain a workplace free from discrimination.

In her Complaint, Baker alleges that the "attempted transfer was part of ongoing harassment from Ken Kendrick," and that, in addition, "Kendrick, among others, severely harassed and ridiculed" her. (DE 1 at ¶¶ 14-15). Specifically, Baker alleges that Kendrick approached her at her desk on September 1, 2010, and asked why her top was cut so low. Baker asserts she was so upset that she used a safety pin to pin the top, which she states she had worn multiple times before without incident. Baker did not file an EEO complaint about this event. Additionally, Baker alleges that on October 18, 2010, Kendrick telephone her, called her a "f-ing

2

idiot," and sent her home. Baker contacted the EEO the same day to complain about this incident. Baker did not return to work again until May of 2011, and she declares that she continues to feel "anxiety in dealing with the Postal Service" and has sought therapy as a result. (DE 22-1, Baker Decl. at ¶¶ 25-26).

Baker asserts three claims against the USPS. In her first count, Baker alleges gender discrimination by contending that her supervisors consistently assigned her the most difficult workload, denied her training opportunities, and treated her more harshly than her male colleagues. In her second, she asserts a hostile work environment claim based on comments from her supervisor. In her third, she alleges retaliatory actions by her supervisors after she made a formal complaint with the EEO in 2010.

## II. STANDARD OF REVIEW

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). This standard does not require "detailed factual allegations," but it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *Twombly,* 550 U.S. at 555, and to "state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. On a motion to dismiss, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

Finally, where, as here, matters outside the pleadings are considered in connection with a defendant's motion, the motion should be treated as one for summary judgment and disposed of as provided in Rule 56. *See* Fed. R. Civ. P. 56(b).

Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant can satisfy its burden by demonstrating an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). To survive summary judgment, the non-movant must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-movant must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). The Court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. ANALYSIS

Baker's claims arise under Title VII, which prohibits discrimination in employment on the basis of race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-2 et seq. For federal employees, the right to bring an action under Title VII requires the timely exhaustion of administrative remedies. *Hunter v. Sec'y of United States Army*, 565 F.3d 986, 993 (6th Cir.

4

2009) (citing *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991)).  "Failure to timely seek EEO counseling is grounds for dismissal of discrimination claims." *Id*.

### A. Gender Discrimination and Hostile Work Environment Claims (Counts One and Two)

Under Title VII, "two types of actions may be brought: (1) [claims based on] 'discrete discriminatory acts,' and (2) claims alleging a 'hostile work environment.'" *Hunter*, 565 F.3d at 993 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)).  In *Morgan*, the Supreme Court explained most discrete acts were "easy to identify" and listed the examples of "termination, failure to promote, denial of transfer, or refusal of transfer." *Morgan*, 536 U.S. at 114.  Hostile work environment claims, however, "involve repeated conduct." *Id.* at 115.

Hostile work environment claims "require the plaintiff to demonstrate that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Hunter*, 565 F.3d at 994 (*quoting Morgan*, 536 U.S. at 115-16).  The basis of a hostile work environment claim "occurs over a series of days or perhaps years, and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Morgan*, 536 U.S. at 115.

The USPS argues that Baker's claims fail under each theory.  The USPS argues that Baker bases her first claim, gender discrimination, on discrete acts that are either barred by her voluntary settlement of her first EEO Complaint or barred by her failure to exhaust her administrative remedies.  The USPS further argues that Baker's second claim, based on isolated incidents, does not rise to the level of a hostile work environment and also cannot survive.

1. **Gender Discrimination Claim**

Baker first asserts a gender discrimination claim. Because she seeks to prove gender discrimination through circumstantial evidence, she must establish a prima facie case by showing: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007) (quoting *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)).

Preliminarily at issue is the impact of Baker's settlement and withdrawal of her first EEO complaint on March 16, 2010. That EEO complaint alleged sex discrimination and specifically referenced Baker's brief reassignment in January 2010. Baker settled and withdrew her first EEO Complaint on March 16, 2010, after participating in mediation. Following that mediation, Baker signed a form which explained that she was withdrawing her complaint and "waiving [her] rights to any appeal of these allegations through the EEO process." (DE 12-4, EEO Case No. 4C-400-0031-10, Withdrawal of Complaint of Discrimination). The USPS argues that by settling and withdrawing her EEO complaint, Baker cannot bring suit in federal court for claims that arose before March 16, 2010. In response, Baker has argued that the USPS "manipulated the EEO procedure" by selecting a union steward to mediate and misleading Baker about the effect of the documents signed. Even if Baker had timely presented this issue,[1] she still "bears the burden of showing that the settlement [s]he made was invalid because of fraud or a mutual mistake under which both parties acted; a unilateral mistake on [her] part will not invalidate the

---

[1] Plaintiffs may not seek to expand their claims or assert new theories in response to summary judgment; the proper procedure for plaintiffs to assert a new claim is to amend their complaint. *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007); *see also Tucker v. Union of Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005).

agreement." *Nicklin v. Henderson*, 352 F.3d 1077, 1081 (6th Cir. 2003). Baker alleges that the selection of Carolyn Tompkins, a union official, allowed the USPS to manipulate the proceedings, but Baker authorized and signed off on this representation. (DE 28-1, EEO Case No. 4C-400-0031-10, Information for Pre-Complaint Counseling). Baker also now claims she did not understand the effect of the "Withdrawal of Complaint of Discrimination" document she signed. (DE 22-1, Baker Decl. at ¶ 23). In support, Baker also provides a March 7, 2012 email from Tompkins, in which Tompkins writes: "At no time was the settlement for dignity and respect considered a withdrawal on the original EEO or any meetings afterward. Which were several." (DE 22-7, E-mail from Carolyn Tompkins to Marilyn Baker (March 7, 2012, 10:56 EST)). These March 2012 e-mails are the first mentions of any dissatisfaction with the EEO process. Regardless, however, the effect of the Baker's settlement and withdrawal is that she cannot bring the same claims now. *Dalessandro v. Monk*, 864 F.2d 6, 8 (2d Cir. 1988) ("Once a plaintiff settles a claim and withdraws it from the EEOC, he may not then sue on the same claim in federal court."); *see also Anderson v. Frank*, 755 F. Supp. 187, 189 (E.D. Mich. 1991) (holding that a voluntary settlement of grievance claim bars an action on district court if the request for relief was the same in both). Therefore, Baker is legally barred from pursuing her claim of discrimination and the claim must be dismissed.

Additionally, Baker's claim must be dismissed because she failed to exhaust her administrative remedies regarding the "discrete acts" of discrimination she alleges. Pursuant to 29 C.F.R. § 1614.105(a)(1), an aggrieved employee must initiate the required activity within 45 days of the alleged illegal practice. Exhausting the administrative remedies is "a necessary prerequisite to filing a discrimination suit in federal court." *Nelson v. General Elec. Co.*, 2 Fed. App'x. 425, 427-28 (6th Cir. 2001) (citations omitted). Baker has not satisfied that prerequisite

7

here.  Except for the incident on October 18, 2010, Baker has not reported any other alleged "discrete acts" to an EEO counselor within 45 days of their occurrence.  Baker has not reported being "given the most difficult assignments, denied proper training and treated more severely and more harshly than were the male supervisors" — the allegations from her Complaint.  Baker also did not report her encounter with Kendrick from September 1, 2010.  This failure to exhaust administrative remedies is grounds for dismissal.  *Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003) (citing *Brown v. General Servs. Admin.*, 425 U.S. 820, 832 (1976)).

After setting aside the settled claims and those barred for failure to exhaust administrative remedies, there remains only the October 18, 2010 incident to form the basis of a gender discrimination claim.  This incident cannot support such a claim, because it does not qualify as a "discrete act" under Title VII.  Moreover, it fails to qualify as an adverse employment action.  A materially adverse employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999).  Examples include termination, demotion, or significantly diminished job responsibilities.  *Id*.  The October 18, 2010 incident does not qualify because a "single, isolated remark, insulting as it may be, simply does not rise to the level of a materially adverse employment action."  *Hunter*, 565 F.3d at 996.  As a result, Baker cannot satisfy the prima facie elements of a gender discrimination claim based on this incident, and so her gender discrimination claim fails.

    **2.  Hostile Work Environment**

Baker next asserts a hostile work environment claim against the USPS.  To establish a prima facie case for a hostile work environment, Baker must demonstrate: "(1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex or race; (4) the harassment created a hostile work environment; and (5)

8

employer liability." *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 500 (6th Cir. 2009) (citing *Williams v. General Motors Corp.*, 187 F. 3d 553, 561 (6th Cir. 1999)). The USPS argues that Baker's claim fails as a matter of law because she lacks evidence that USPS's conduct created a hostile work environment.

A hostile work environment exists "[w]hen the workplace is so permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). When analyzing whether alleged harassment is sufficiently severe or pervasive, the Sixth Circuit Court of Appeals considers the totality of the circumstances. *Williams*, 187 F.3d at 562. Under this approach, "courts must be mindful to review the work environment as a whole, rather than focusing single-mindedly on individual acts of alleged hostility." *Id*. at 563. Still, viewed as a whole, the workplace must be objectively and subjectively offensive and hostile; that is, a reasonable person as well as the plaintiff must find the environment hostile. *Id*. at 568. Factors that courts consider include: "[t]he frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether the conduct unreasonably interferes with an employee's work performance." *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999) (quoting *Harris*, 510 U.S. at 23).

Here, Baker's hostile work environment claim, as alleged in the complaint, does not present conduct that is "severe and pervasive." It is not disputed that on October 18, 2010, USPS manager Kendrick called Baker a "f-ing idiot" during a telephone call. While Baker failed to exhaust her administrative remedies in regard to the September 1, 2010 allegation, also involving Kendrick, she may use that and other prior acts as background evidence. *See Suarez v. Sec'y of*

9

*the Army*, No. 3:07-CV-254, 2007 U.S. Dist. LEXIS 84774, *10 (W.D. Ky. Nov. 15, 2007). In response to the pending motion, Baker provides handwritten notes from co-workers discussing Kendrick's behavior. One note explains that on April 1, 2011, Kendrick, when asked about Baker, responded that "she's in the crazy house." (DE 22-9, Handwritten Note of Ronald J. Young, June 14, 2011). Another note explains that Kendrick came into the Brentwood Station "very often" once Baker started working there. (DE 22-16, Handwritten Note of Sandra L. Dove, February 8, 2012). Even considering all of this, there is still not sufficient evidence of "severe and pervasive" conduct, because "[o]ccasional offensive utterances, which may have been 'offensive utterances,' do not rise to the level required to create a hostile work environment." *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008). Instead, "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998). The conduct alleged by Baker is not sufficiently "severe and pervasive" to rise to this level. The facts alleged here are similar to those the D.C. Circuit Court of Appeals found insufficient in *Stewart v. Evans, Sec'y of Commerce*. 275 F.3d 1126 (D.C. Cir. 2002). In *Stewart*, a plaintiff alleged her supervisor berated her with profane language, which included calling the plaintiff a "f-ing idiot" over the telephone. *Id*. at 1131-32. The D.C. Circuit Court held that this single phone call, while profane, could not be characterized as sexual harassment and was not sufficiently severe or pervasive as to create a hostile work environment. *Id*. at 1133. While Baker alleges more than a single instance, the few incidents of offensive conduct do not amount to actionable harassment. *See, e.g., Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 754 (4th Cir. 1996) (holding that multiple incidents between supervisor and plaintiff, over seven years, were not sufficiently severe or pervasive to create objectively hostile or abusive work environment); *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 534 (7th Cir.

1993) (holding that while there were two instances of "undoubtedly inappropriate" conduct in the form of unwelcome advances, the conduct "was not so severe or pervasive as to create an objectively hostile work environment."). Because Baker's complaint does not allege behavior from USPS management that made Baker's environment objectively hostile, her hostile work environment claim fails.

### B. Retaliation Claim

Section 704(a) of Title VII prohibits retaliation against an employee "because [s]he has opposed any [unlawful employment] practice . . . or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title]." 42 U.S.C. § 2000e-3(a).

To survive summary judgment, Baker must present either direct evidence of retaliation or a prima facie case of retaliation through circumstantial evidence. *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973); *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). Direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Baker has not provided direct evidence. When a plaintiff presents only circumstantial evidence, Title VII retaliation claims are examined under the *McDonnell Douglas* evidentiary framework. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). The plaintiff has the initial burden under *McDonnell Douglas* to establish a prima facie case of retaliation by showing: (1) that plaintiff engaged in an activity protected by Title VII; (2) that the defendant knew of the plaintiff's protected activity; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity

and the adverse employment action. *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991) (citing *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)). The USPS argues that Baker fails to satisfy the third and fourth prongs of the prima facie case, because she fails to plead a materially adverse employment action and fails to plead a causal connection between the protected activity and the alleged adverse action. Overall, the USPS contends that Baker's pleading of her retaliation claim is conclusory and lacking in specificity.

As a discussed above, a materially adverse employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Hollins*, 188 F.3d at 662. In support of her claim, Baker offers the conclusion that USPS management "engaged in reprisal and retaliatory discrimination" against her following her pursuit of the EEO complaint. This unsupported conclusion is not sufficient. Of the two incidents specifically alleged in her Complaint – the interactions with Kendrick on September 1, 2010, and October 18, 2010 – neither qualifies as a materially adverse employment action. Furthermore, the Supreme Court has emphasized that material adversity, which produces injury or harm, must be separated from "trivial harms." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). A materially adverse action is one that is likely to discourage victims of discrimination from bringing EEO complaints; "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id*.

Even if these incidents qualified as adverse employment actions, there is no evidence to show causation. The Sixth Circuit Court of Appeals has held temporal proximity between the protected activity and the adverse employment action can raise an inference of causation. *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004). To create the inference, there must be close proximity: "previous cases that have permitted a prima facie case to be made based on the

proximity of time have all been short periods of time, usually less than six months." *Parnell v. West*, No. 95-2131, 1997 U.S. App. LEXIS 12023, *8 (6th Cir. May 21, 1997) (holding that a gap of seven months did not support an inference of causation). Here, Baker brought her EEO complaint on January 19, 2010, and the first of the alleged incidents occurred on September 1, 2010, more than eight months later. This delay is too tenuous, with no other evidence of causation, to create an inference of causation. Therefore, Baker has failed to establish a prima facie case of retaliation and this claim must also fail.

## IV. CONCLUSION

Accordingly, for the above reasons,

IT IS ORDERED:

(1) the Defendant Patrick Donahoe, Postmaster General for the United States Postal Service's Motion to Dismiss or, in the Alternative, for Summary Judgment (DE 12) is GRANTED;

(2) the Plaintiff's Complaint is DISMISSED; and

(3) this matter is STRICKEN from the active docket of this Court.

Entered this 26th day of September 2012.



Signed By:
*Karen K. Caldwell*
United States District Judge